UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CHARLES LEDBETTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 15-271-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| QUINTON CRAIG MEEK, M.D., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Charles Ledbetter is confined at the Kentucky State Reformatory in La Grange, Kentucky. Ledbetter has filed a Complaint under 42 U.S.C. § 1983, alleging that Defendant Quinton Meek violated his federal constitutional rights. [Record No. 1] Specifically, he asserts an Eighth Amendment cruel and unusual punishment claim against the defendant based on psychotic episodes Ledbetter experienced in late November and early December 2014. [*Id.*, p. 4; Record No. 27-2, p. 4] Pretrial discovery ended on March 30, 2016. [Record No. 15] On June 15, 2016, Dr. Meek moved for summary judgment. [Record No. 27]

Dr. Meek's motion was referred to a United States Magistrate Judge for review and issuance of a report under 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Hanly A. Ingram issued his Recommended Disposition on July 22, 2016, recommending that the motion for summary judgment be granted. [Record No. 28] Ledbetter failed to file objections to the Recommended Disposition within the time permitted. For the reasons discussed below, the Court will adopt the Magistrate Judge's Recommended Disposition, grant the defendant's motion for summary judgment, and dismiss the plaintiff's claims, with prejudice.

- 1 -

**I.**

Ledbetter's claims involve events occurring in late November or early December 2014 at the Northpoint Training Center, located in Burgin, Kentucky. [Record Nos. 1, p. 4; 27-2, p. 4] The plaintiff alleges that Dr. Meek prescribed him three medications that interacted to make him "psychotic," causing him to faint four times and experience loss of memory and bad nerves. [Record No. 1, p. 4] He identifies the medications as indomethacin,[1] lithium,[2] and Prozac.[3] [*Id.*]

The uncontested documents submitted by Dr. Meek, establish that he evaluated Ledbetter on November 10, 2014, because Ledbetter requested help due to feeling "very paranoid." [Record No. 27-2, p. 2] Dr. Meek noted that Ledbetter was diagnosed with dysthymic disorder and prescribed fluoxetine hydrochloride[4] and lithium carbonate. [*Id.*, p. 3] On November 27, 2014, there was a "medical emergency" in the plaintiff's dorm. [*Id.*, p. 4] Ledbetter was "thrashing around, lifting head and grunting" while another inmate held him

---

[1]  Indomethacin is a "nonsteroidal anti-inflammatory drug" used to treat "mild to moderate acute pain and relieve symptoms of arthritis (osteoarthritis and rheumatoid arthritis) or gout, such as inflammation, swelling, stiffness, and joint pain." *Indomethacin (Oral Route)*, MAYO CLINIC, *available at* http://www.mayoclinic.org/drugs-supplements/indomethacin-oral-route/precautions/drg-20069700 (last visited August 9, 2016).

[2]  Lithium treats mania as part of bipolar disorder. *See Lithium (Oral Route)*, MAYO CLINIC, *available at* http://www.mayoclinic.org/drugs-supplements/lithium-oral-route/description/drg-20064603 (last visited August 9, 2016).

[3]  Prozac is the brand name for a selective serotonin reuptake inhibitor ("SSRI") and is used to treat depression. *See Depression (major depressive disorder)*, MAYO CLINIC, *available at* http://www.mayoclinic.org/diseases-conditions/depression/in-depth/ssris/art-20044825  (last visited August 9, 2016).

[4]  Fluoxetine hydrochloride is the scientific name for Prozac. *See Fluoxetine Hydrochloride*, DAILY Med, *available at* https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=c06f80cf-be99-0b77-ebd7-7a5f1561d4b4 (last visited August 9, 2016).

down on his bed. [*Id.*] When Ledbetter got up, he started punching the locker and became aggressive when security tried to stop him. As a result, security wrestled him to the floor. [*Id.*] Eventually, security coaxed Ledbetter to get in a wheelchair to be taken to "medical." On the way, he yelled "it's the medicine!" [*Id.*] At medical, Ledbetter was helped onto a gurney, where he started grabbing bedrails, "violently thrashing," flipping over onto his stomach, and yelling about the medicine and how he did not want to hurt anyone. [*Id.*]

Dr. Maureen Khalil instructed staff to contact the psychologist because she did not believe that the medications would cause such behavior. [*Id.*] Security then transported Ledbetter to the Special Management Unit, where he was placed in a restraint chair. [*Id.*] On the way, Ledbetter kicked an officer onto the ground. The plaintiff sustained only a couple of scratches/abrasions that day. [*Id.*]

Following this "manic" episode, Dr. Meek prescribed Ledbetter Chlorpromazine[5] and diphenhydramine.[6] [*Id.*, p. 5] On December 1, 2014, Ledbetter was again acting aggressive and confused. [*Id.*, p. 6] Twelve officers were needed to transfer Ledbetter to the Correctional Psychiatric Treatment Unit, where he was yelling nonsensical phrases and refusing to communicate with staff. After unsuccessful attempts to handcuff Ledbetter, he was tased,

---

[5]   Chlorpromazine is the brand name for a phenothiazine used to treat schizophrenia and other psychotic disorders. It controls agitation, nausea, severe hiccups, and pain. *See Phenothiazine (Oral Route, Parenteral Route, Rectal Route)*, MAYO CLINIC, *available at* http://www.mayoclinic.org/drugs-supplements/phenothiazine-oral-route-parenteral-route-rectal-route/description/drg-20070394 (last visited August 9, 2016).

[6]   Diphenhydramine relieves red, irritated, and itchy eyes; sneezing; hay fever; allergies; and the common cold. *See Diphenhydramine*, MEDLINEPLUS, *available at* https://medlineplus.gov/druginfo/meds/a682539.html#why (last visited August 9, 2016).

placed in a restraint chair, and given Zyprexa[7] and Ativan.[8] [*Id.*] After some injections, Ledbetter was able to respond to questions but still showed tremors. He became drowsy and calm but later ramped up again. [*Id.*] Dr. Dana McGaffee agreed with the previous diagnosis of manic psychotic delirium and gave Ledbetter Zyprexa and benzo.[9] [*Id.*, p. 7]

On December 5, 2014, Ledbetter had another "manic episode" with bizarre speech. [*Id.*, p. 8] He would stand on his desk or bed and do inverted push-ups. [*Id.*] The record reflects that he was prescribed Zyprexa, acetaminophen,[10] Mi-Acid,[11] indomethacin, and ranitidine hydrochloride[12] from late November to early December 2014. [*Id.*, pp. 8−9]

**II.**

---

[7] Zyprexa is the brand name for olanzapine, which is used to treat agitation as a result of schizophrenia and bipolar mania. *See Olanzapine (Intramuscular Route)*, MAYO CLINIC, *available at* http://www.mayoclinic.org/drugs-supplements/olanzapine-intramuscular-route/description/drg-20065193 (last visited August 9, 2016).

[8] Ativan is the brand name for lorazepam, which is used to relieve anxiety and treat certain convulsive disorders. *See Lorazepam (Injection Route)*, MAYO CLINIC, *available at* http://www.mayoclinic.org/drugs-supplements/lorazepam-injection-route/description/drg-20072326 (last visited August 9, 2016).

[9] "Benzo" appears to be short for "benzodiazepine." Benzodiazepines, such as Ativan, are used to depress the central nervous system. *See id.*

[10] Acetaminophen is commonly known as Tylenol. *See Acetaminophen (Oral Route, Rectal Route)*, MAYO CLINIC, *available at* http://www.mayoclinic.org/drugs-supplements/acetaminophen-oral-route-rectal-route/description/drg-20068480 (last visited August 9, 2016).

[11] This over-the-counter drug is used for heartburn and indigestion. *See MI-ACID Regular Strength*, DAILY MED, *available at* https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=5aec9caa-0fa1-408d-95db-4d2bd33fc9f2 (last visited August 9, 2016).

[12] Ranitidine hydrochloride is used to treat ulcers. *See Ranitidine Hydrochloride*, DAILY MED, *available at* https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=9ED8B5A6-4BBE-49DD-901B-1D86E8378BD3 (last visited August 9, 2016).

While this Court must make a *de novo* determination of those portions of the magistrate judge's recommendations to which an objection is made, 28 U.S.C. § 636(b)(1)(c), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Moreover, a party who fails to file objections to a magistrate judge's proposed findings of fact and recommendation waives the right to appeal. *See United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008); *Wright v. Holbrook*, 794 F.2d 1152, 1154–55 (6th Cir. 1986).

Ledbetter has not filed objections to the Recommended Disposition, and the time to do so has expired. Nevertheless, having fully considered the record, and having considered the motion *de novo*, the Court agrees with the Magistrate Judge's analysis and conclusions concerning the issues raised by Dr. Meek's motion for summary judgment.

## III.

Magistrate Judge Ingram recommends that the Court grant Dr. Meek's motion for summary judgment because: (i) Ledbetter has failed to timely respond to the motion; (ii) Ledbetter has failed to provide evidence of causation; (iii) the plaintiff has not provided evidence of deliberate indifference; and (iv) the plaintiff has failed to exhaust his administrative remedies. [Record No. 28, p. 5] While courts may sometimes deem a plaintiff to have waived opposition to a motion by failing to respond, the Court will not deem Ledbetter to have waived his opposition here. *See Scott v. Tenn.*, 878 F.2d 382 (table), 1989 WL 72470, *2 (6th Cir. 1989).

Summary judgment is appropriate if there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). For a movant who does not bear the burden of persuasion at trial, he may either submit affirmative evidence negating an essential element of the other party's claim or demonstrate that the other party's evidence is insufficient to establish an essential element of the claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting).

**A.     The Merits**

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment and is applicable to the states. *Robinson v. California*, 370 U.S. 660, 675 (1962). It obligates the states "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). An Eighth Amendment deliberate indifference claim has both an objective and a subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). First, "the plaintiff must allege that the medical need at issue is

'sufficiently serious.'" *Id.* at 703 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Next, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* (citing *Farmer*, 511 U.S. at 837).

For the first prong, a medical need is "sufficiently serious" when a doctor has diagnosed the need for treatment or when the need would be obvious to a lay person. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). For the second prong, the inmate must demonstrate that the defendant's deliberate indifference "unnecessarily and wantonly inflict[ed] pain" upon him. *Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006). This is satisfied by "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[C]ourts may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 553 (6th Cir. 2014) (internal quotation marks and citation omitted). But the Sixth Circuit disfavors disputes over the adequacy of treatment where the inmate has received medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

The Magistrate Judge concluded that the record does not support the plaintiff's allegation that Dr. Meek prescribed him lithium, Prozac, and indomethacin at the same time. [Record No. 28, p. 3] Although Ledbetter was prescribed lithium carbonate and Prozac on November 10, 2014, and indomethacin from November 25, 2014, to December 8, 2014, there is no indication that Dr. Meek prescribed the indomethacin. [Record No. 27-2, pp. 2, 9] While

this fact is nominally disputed, Ledbetter has not provided any evidence, by affidavit or otherwise, that Dr. Meek prescribed the indomethacin.

To the extent Ledbetter claims that Dr. Meek should have known that he was taking indomethacin, the Court notes that the prescription for indomethacin came *after* Dr. Meek's prescriptions relating to Prozac and lithium carbonate. Consequently, the plaintiff cannot show that Dr. Meek's actions or inactions caused the alleged injuries at issue. *See Parsons v. Caruso*, 491 F. App'x 597, 604 (6th Cir. 2012) (discussing how the defendant's indifference must be "a proximate cause" of the plaintiff's injury). In any event, Ledbetter fails to present any evidence that the three medications he was prescribed would likely cause manic episodes like the ones he experienced. *See, e.g.*, *Maston v. Montgomery Cnty. Jail Medical Staff Personnel*, 832 F. Supp. 2d 846, 852 (S.D. Ohio 2011) (holding that plaintiff failed to establish either component of a deliberate indifference claim where he presented no evidence that the deprivation of medication caused the injuries at issue).

Further, the plaintiff fails to meet the subjective prong of the deliberate indifference test. In *Brittenham v. Dinsa*, a district court in Michigan dismissed an Eighth Amendment claim where the plaintiff alleged that a doctor prescribed a medication that interacted negatively with another medication he was taking. No. 2:09-CV-14025, 2010 WL 727748, *1 (E.D. Mich. Feb. 23, 2010). The court reasoned that a mere disagreement over methods of treatment could not support an Eighth Amendment claim. *Id.* at *2. Likewise, in *Reed v. Craig*, a district court in Ohio dismissed the plaintiff's claims against a doctor because he merely asserted that the doctor prescribed a medication that caused him to have an allergic reaction. No. 1:11-cv-719, 2011 WL 5076449, *3 (S.D. Ohio Oct. 25, 2011), *adopted by* 2011 WL 6442376, *1 (S.D. Ohio Dec. 21, 2011). The court explained that the plaintiff failed to

allege facts suggesting that the doctor was aware that the medication posed a significant risk to the plaintiff's health. *Id.*; *see also Ascencio v. Hall*, No. 4:11cv503, 2011 WL 4345908, *3 (N.D. Ohio Sept. 15, 2011) (dismissing Eighth Amendment claim where plaintiff alleged defendant should have foreseen consequences of prescribing him certain medication).

In addition, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Ledbetter contends that Dr. Meek's actions constituted "medical malpractice and negligence," rather than deliberate indifference. [Record No. 1, p. 4] He offers no evidence that Dr. Meek was aware that he was simultaneously prescribed lithium, Prozac, and indomethacin, or that the combination of such medications posed a significant risk to Ledbetter's health. *See Reed*, 2011 WL 5076449, at *3. As a result, he fails to present evidence that Dr. Meek "unnecessarily and wantonly inflict[ed] pain" upon him, and his claim fails at the second prong. *See Perez*, 466 F.3d at 423; *see also Reed*, 2011 WL 5076449, at *4 ("At most, plaintiff's allegations may give rise to a claim of negligence on the part of Dr. Bawazer in prescribing the psychiatric medication to plaintiff."); *Hall v. Nurse V.*, No. 1:09-cv-381, 2009 WL 2243781, *2 (S.D. Ohio Jul. 23, 2009) ("Plaintiff fails to allege any facts showing the defendants knowingly provided him with the wrong medication or that defendants knew plaintiff would suffer adverse side effects from the medication."). Therefore, Ledbetter's claim against Dr. Meek cannot withstand summary judgment.

### B. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 212 (2007). To comply with the PLRA, an inmate must "tak[e] advantage of each step the prison holds out for resolving the claim internally and [] follow[] the critical procedural rules of the prison's grievance process . . . ." *Reed–Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (internal quotation marks and citation omitted).

According to the Kentucky Department of Corrections' Inmate Grievance Procedure, an inmate must submit a written grievance to a Grievance Coordinator within five business days of an incident or decision. [Record No. 27-3, p. 15] After informal resolution, the Health Care Grievance Committee conducts a review. [*Id.*, p. 17] Next, the Medical Director reviews the grievance and makes a final decision. [*Id.*, p. 18]

Ledbetter has submitted no documentation of his compliance with the Kentucky Department of Corrections' grievance procedures. Nor has he set forth any basis excusing his failure to use the grievance procedure. As a result, his claims would be subject to dismissal under 42 U.S.C. § 1997e(a) even if summary judgment were not appropriate on the merits. *See, e.g.*, *Martin-Dobson v. Hall*, No. 3:12-cv-1146, 2014 WL 2689261, *1 (M.D. Tenn. Jun. 13, 2014).

**IV.**

Magistrate Judge Ingram properly concluded that Ledbetter has failed to present any genuine disputes regarding any material facts concerning his Eighth Amendment cruel and unusual punishment claim. Further, Dr. Meek is entitled to judgment as a matter of law. Additionally, the Magistrate Judge properly determined that Ledbetter did not rebut the

defendants' contention that he failed to exhaust his administrative remedies. Accordingly, it is hereby

    **ORDERED** as follows:

    1.    United States Magistrate Judge Hanly A. Ingram's Recommended Disposition [Record No. 28] is **ADOPTED** and **INCORPORATED** by reference.

    2.    Defendant Quinton Meek's motion for summary judgment [Record No. 27] is **GRANTED**.

    3.    Plaintiff Charles Ledbetter's claims against Dr. Meek are **DISMISSED**, with prejudice.

    4.    This action is **DISMISSED** and **STRICKEN** from the Court's docket.

    5.    A separate Judgment shall issue this date.

This 10th day of August, 2016.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge